IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BIG DOG MOTORCYCLES, L.L.C.,

    Plaintiff,

    v.                              Case No. 04-2419-JWL

BIG DOG HOLDINGS, INC.,

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Big Dog Motorcycles, L.L.C. (Motorcycles) filed this lawsuit against defendant Big Dog Holdings, Inc. (Holdings) seeking a declaratory judgment that its use of the mark Big Dog Motorcycles does not infringe any valid trademark or service mark rights of Holdings and does not constitute unfair competition with Holdings. The matter is before the court on defendant's motion to dismiss or transfer (doc. 4). By virtue of this motion, defendant asks the court to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(3) on the grounds of forum non conveniens or, alternatively, to transfer this case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California so that this case can be consolidated with another related lawsuit between the parties. For the reasons explained below, the court will deny the motion in its entirety.

## BACKGROUND

Plaintiff Motorcycles has its principal place of business in Wichita, Kansas. Motorcycles manufactures and sells premium cruiser motorcycles, parts, accessories, and promotional apparel and collectibles in conjunction with its motorcycle business. Defendant Holdings has its principal place of business in Santa Barbara, California. Holdings manufactures and sells apparel and other consumer merchandise bearing the marks "Big Dogs" and/or "Big Dog Sportswear." The parties have quite a history of litigation surrounding plaintiff's use of certain trademarks and service marks, namely Big Dog, Big Dog Motorcycles, and other similar marks (collectively, the marks).

In 1995 and 1996 Holdings contacted Motorcycles and advised Motorcycles that its distribution of apparel under the marks Big Dog and Big Dog Motorcycles infringed Holdings' rights in the marks. In November of 1996, Motorcycles filed a declaratory judgment action in the United States District Court for the District of Kansas seeking a finding that its use of the marks did not infringe upon or otherwise interfere with the rights of Holdings or its related company, Big Dog USA, Inc. Later that same month, Holdings and Big Dog USA, Inc. filed a lawsuit against Motorcycles in the United States District Court for the Central District of California alleging that Motorcycles' use of the marks constituted trademark infringement, false designation of origin, unfair competition, dilution, and/or misappropriation.

In September of 1997, the parties settled and dismissed the Kansas and California lawsuits. Under the terms of this 1997 settlement agreement and related documents executed in conjunction with the settlement agreement, Motorcycles assigned all right, title, and interest

2

in the marks to Holdings in exchange for an exclusive, perpetual license to use the marks in connection with motorcycle products and/or services, marketing materials, business materials, promotional products, and apparel. The 1997 settlement agreement further provided that if the license was terminated at any time by either party, any and all common law rights that Motorcycles had in the marks at the time of the settlement would revert back to Motorcycles.

The arrangement appears to have worked for a number of years. Then, in approximately October of 2002, the parties began having disputes regarding the license agreement. Once again, litigation ensued. In April of 2003, Holdings filed a lawsuit in California alleging that Motorcycles had breached the license agreement by selling unauthorized products. Motorcycles brought counterclaims asserting that Holdings had breached the license agreement by unreasonably withholding approval for a number of products and by selling motorcycle-related products.

Once again, the parties settled this dispute. Under the terms of the 2004 settlement agreement, Holdings dismissed its claims with prejudice and Motorcycles dismissed its claims without prejudice. The 2004 settlement agreement also contained a forum selection clause which required Motorcycles to assert any subsequent claims arising out of the facts or allegations previously set forth in its counterclaims in the Central District of California or an appropriate California state court. It seems to be undisputed at this procedural juncture that, because the only claims that Motorcycles asserted in its counterclaims were based on Holdings' alleged breach of the license agreement, the only claims that Motorcycles agreed

to subsequently file in California, if at all, were claims arising from Holdings' alleged breach of the license agreement.

The parties' efforts to achieve an amicable working relationship surrounding use of the marks proved fruitless and Motorcycles filed suit against Holdings on June 28, 2004, in the Central District of California, essentially renewing the counterclaims that it had previously asserted against Holdings in the 2003 lawsuit. The complaint: asserted that Holdings had breached the license agreement by unreasonably withholding approval of certain items and by using apparel graphics depicting motorcycles; sought a declaratory judgment "regarding the rights of the parties with respect to the License Agreement as it pertains to Holdings' breach of the License Agreement," Compl. in Case No. 04-4701, United States District Court for the Central District of California [hereinafter the California lawsuit], ¶ 76, at 26; and alleged that Holdings' actions constituted unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*, and California law. On August 10, 2004, Holdings filed its answer and asserted a counterclaim alleging that Motorcycles also breached the license agreement by continuing to use and to offer for sale unapproved items bearing the marks. In addition, Holdings asserted counterclaims that Motorcycles' use of the marks constituted trademark infringement" and "false designation of origin, false descriptions, and false advertising." Big Dog Holdings, Inc.'s Answer to Pl. Big Dog Motorcycles LLC's Compl., With Countercls. in the California lawsuit, ¶¶ 34, 39 at 23-24.

On August 16, 2004, Holdings notified Motorcycles that it was terminating the license agreement effective immediately and demanded that Motorcycles "cease the use of the Big

4

Dog trademarks and change [its] corporate name to something else." Letter Dated Aug. 16, 2004. Holdings expressed doubts about trying to negotiate a settlement, but stated that it was willing to attempt to mediate the parties' dispute. It is undisputed at this procedural juncture that upon Holdings' termination of the settlement agreement, any and all common law rights that Motorcycles originally possessed in the marks reverted back to Motorcycles pursuant to the terms of the 1997 settlement agreement.

Motorcycles filed this lawsuit on September 3, 2004. In this lawsuit, Motorcycles seeks a declaratory judgment that its use of the mark Big Dog Motorcycles in conjunction with the sale and distribution of motorcycles, motorcycle parts, and accessories (including apparel, collectibles, and promotional clothing) does not infringe any valid trademark or service mark rights of Holdings and does not constitute unfair competition with Holdings.                        In November of 2004, Motorcycles sought and was permitted by the court on November 15, 2004, to file a first amended complaint in the California lawsuit. By virtue of the amendment, Motorcycles added another breach of contract claim seeking liquidated damages for Holdings' alleged wrongful termination of the license agreement. In addition, Motorcycles dropped its declaratory judgment claim, presumably because adjudication of the parties' ongoing rights under the license agreement was rendered moot by Holdings' termination of the agreement. On December 7, 2004, Holdings filed its first amended counterclaims in the California lawsuit. This pleading amended Holdings' counterclaims to additionally allege that "to the extent [Motorcycles] used such marks prior to [the 1997] settlement and continued to use such marks thereafter, such use is likely to cause confusion among consumers and thus has

5

constituted and continues to constitute infringement under the Lanham Act" and "false designation of origin, false description, and false advertising under the Lanham Act." Def. Big Dog Holdings, Inc.'s First Am. Countercls. in the California lawsuit, ¶¶ 36, 42, at 8, 10. Holdings also added an additional counterclaim seeking declaratory relief that Motorcycles' use of the Big Dog Motorcycles mark in the absence of the license agreement constitutes infringement and unfair competition under the Lanham Act.

Holdings now asks the court to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(3) on the grounds of forum non conveniens or, alternatively, to transfer this case pursuant to 28 U.S.C. § 1404(a) so that this case can be consolidated with the California lawsuit. Holdings contends that the interests of justice favor transferring this lawsuit to California so that the two cases can be consolidated and avoid unnecessarily duplicative litigation. Motorcycles opposes any such transfer and contends that the two cases are different: the California case revolves solely around the parties' rights and duties under the license agreement whereas this case seeks an adjudication of their respective rights in the absence of the license agreement.

## MOTION TO DISMISS

Defendant asks the court to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(3) on the grounds of forum non conveniens. Rule 12(b)(3), however, provides a mechanism for dismissal on the grounds of "improper" venue. Defendant does not contend that venue is improper, but rather merely inconvenient. Thus, the court denies defendant's motion to the extent that it seeks relief under Rule 12(b)(3).

Defendant's motion is also denied to the extent that it seeks dismissal for forum non conveniens. Defendant relies on *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), to support its forum non conveniens argument. As plaintiff correctly points out, however, in 1948 Congress enacted the federal venue transfer statute, 28 U.S.C. § 1404(a). Given this statute, "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994); *see also* 15 Charles Alan Wright et al., Federal Practice & Procedure § 3828, at 278-80 (2d ed. 1986) (explaining this principle and also suggesting that forum non conveniens may apply in rare circumstances when the more convenient forum is a state court or a territorial court); *see generally, e.g.*, *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481 (10th Cir. 1983) (affirming district court's dismissal on grounds of forum non conveniens where the incident occurred in Norwegian territorial waters and Norway was a more convenient forum); *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602 (10th Cir. 1998) (same, where incident occurred in France and France was a more convenient forum). In this case, defendant contends that the more convenient forum is the United States District Court for the Central District of California. As such, the relative convenience of litigating this case in this court versus the Central District of California is governed by the federal venue transfer statute, 28 U.S.C. § 1404(a), not the forum non conveniens doctrine.

**MOTION TO TRANSFER**

A motion to transfer to a more convenient forum is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). The court should consider the following factors in determining whether to transfer a case:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516. The plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in favor of the movant. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). The party seeking to transfer the case has the burden of proving that the existing forum is inconvenient. *Id.*

Applying these factors to the circumstances of this case, the court concludes that they weigh toward denying the motion to transfer. Plaintiff chose to file this action in the District of Kansas. As noted above, this creates a strong presumption in favor of retaining this case. The parties do not argue that considerations such as the cost and accessibility of witnesses and proof, questions regarding the enforceability of a judgment, congested dockets, or questions

of legal interpretation favor one forum over another. Rather, defendant Holdings' sole argument is based on avoiding unnecessarily duplicative litigation. Certainly, this is a valid concern because identical issues exist in both lawsuits and it would be inefficient to litigate them in two separate lawsuits. The court is not, however, persuaded that the solution to this predicament is to transfer this case to California. An explanation of the court's reasoning must necessarily begin with an understanding of the nature of the claims at issue in the two lawsuits.

At the time this lawsuit was filed there was not much, if any, legal or factual overlap between the two lawsuits. At that time, the posture of the California lawsuit was pre-termination of the license agreement and, as such, the parties' allegations focused on their rights in the context of the license agreement. Clearly, questions relating to the parties' alleged breaches of the license agreement are unrelated to their common law rights in the Big Dog Motorcycles mark that is at issue in this lawsuit. At the time this lawsuit was filed, the only claims that had been asserted in the California lawsuit that were even arguably related to the claims at issue in this lawsuit were Holdings' allegations of trademark infringement and unfair competition. Holdings, however, only asserted those counterclaims "to the extent [Motorcycles'] conduct as alleged herein . . . does not conform to the License Agreement." Of course, those counterclaims were premised on the fact that the license agreement was still in force, and consequently Motorcycles' assignment of its rights in the marks was equally in force at that time. Hence, at that time, Holdings asserted its counterclaim in the context of Holdings possessing *both* of the parties' common law rights in the marks. Upon termination of the license agreement, Motorcycles' rights in the marks reverted and Motorcycles filed this

9

lawsuit seeking an adjudication of its common law rights in the marks outside of the context of the license agreement. The only overlap between the two lawsuits was the fact that Holdings had terminated the license agreement and, even then, the issues surrounding termination of the license agreement were different in the two lawsuits. In the California lawsuit, the issue was whether Holdings breached the license agreement by the manner in which it terminated the agreement. By comparison, the only manner in which Holdings' termination of the license agreement is implicated in this lawsuit is the fact that it triggered reversion of the parties' original legal rights in the marks, an issue which seems to be undisputed and merely provides background context as to why the parties are now seeking an adjudication of their common law rights in the marks. Thus, in sum, at the time this lawsuit was filed the two lawsuits were not related in any meaningful respect that would warrant transfer.

With that being said, at this point in time identical legal and factual issues are present in both cases. Once Holdings terminated the license agreement, the parties' respective rights in the marks reverted to their original legal status pursuant to the terms of the 1997 settlement agreement. Once those rights reverted, Motorcycles filed this lawsuit on September 3, 2004, seeking a declaratory judgment that its use of the Big Dog Motorcycles mark in the absence of the license agreement (i.e., with the parties rights reverted to their original positions) does not constitute infringement or unfair competition. Approximately three months later on December 7, 2004, Holdings filed its amended counterclaims in the California lawsuit seeking a declaratory judgment that Motorcycles' use of this mark constitutes infringement and unfair

competition now that the parties have reverted to their original positions. Thus, at this point in time identical issues are present in both lawsuits.

The court's analysis of whether the interests of justice favor deciding these issues in this court or in California is informed by the first-to-file rule. This rule "is a factor that typically determines, in the absence of compelling circumstances, which of two concurrent federal court actions should proceed to judgment." *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002) (quotation and citation omitted); *cf. P & P Indus. v. Sutter Corp.*, 179 F.3d 861, 870 (10th Cir. 1999) (noting the first-to-file rule may play a role in determining which court should have the power to confirm an arbitration award). Holdings urges the court to apply this first-to-file rule and transfer this case to California, the first-filed action. The first-to-file rule, however, only applies to mirror-image actions. *See Accessible Techs., Inc. v. Vortech Eng'g, Inc.*, No. 99-2165-JWL, 1999 WL 588218, at *2 n.2 (D. Kan. July 16, 1999). As explained previously, at the time this lawsuit was filed the California lawsuit and this case raised separate and distinct issues. The issues in the California lawsuit arose from the parties' respective rights under the license agreement in the context of Motorcycles' assignment of its rights in the marks to Holdings, whereas the parties' dispute in this lawsuit is the parties' respective common law rights in the marks. Thus, the relevant mirror-image actions for purposes of the first-to-file rule are this lawsuit and the first amended counterclaims in the California lawsuit. As between the two, this lawsuit was filed first and hence the first-to-file rule calls for this court to adjudicate the parties' dispute surrounding their common law rights in the marks. *Cf. Thrivent Fin. for Lutherans v.*

11

*Croisant*, No. 04-2317-GTV, 2004 WL 2452994, at *1-*3 (D. Kan. Oct. 26, 2004) (granting the plaintiff's motion to strike the defendant's counterclaims where the defendant had previously filed the same claims against the plaintiff in another case), *on reconsideration*, 2004 WL 2634445, at *1-*2 (D. Kan. Nov. 16, 2004) (granting reconsideration and transferring the claims to be consolidated with the other case rather than striking them).

The court acknowledges that although a first-filed suit generally has priority, certain circumstances may justify giving priority to defendant's later-filed counterclaims. *See Employers Reinsurance Corp. v. MSK Ins., Ltd.*, No. 01-2608-CM, 2003 WL 21143105, at *6 (D. Kan. Mar. 31, 2003). In particular, "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *Buzas Baseball, Inc. v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 98-4098, 1999 WL 682883, at *3 (10th Cir. Sept. 2, 1999) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)).[1] For example, in *Tempco*, the Seventh Circuit affirmed a district court's decision to decline to exercise jurisdiction over a first-filed declaratory judgment action in favor of a trademark infringement action that was filed four days later. 819 F.2d at 749-50. In that case, the defendant's attorney had sent a letter to the plaintiff on April 8, 1985, demanding that the plaintiff cease infringing the defendant's trademark. *Id.* at 746-47. Eight days later, he sent another letter. The following day, plaintiff's counsel informed defendant's

---

[1] The court is citing this unpublished opinion from the Tenth Circuit for its persuasive value on a material issue.

12

counsel that the plaintiff was not inclined to comply with the demand. A few days later, defense counsel sent plaintiff another letter stating that the plaintiff had left the defendant no alternative but to file an action to protect its interests. The plaintiff received the letter on May 2, 1985, and filed a declaratory judgment action that same day. The defendant filed an infringement action only four days later. In reasoning that the court should decline to exercise jurisdiction over the declaratory judgment action in favor of the infringement action, the Seventh Circuit reasoned that the plaintiff in the declaratory judgment action had already engaged in the allegedly infringing conduct and therefore the defendant's right to a coercive remedy had already accrued. *Id.* at 749. The court implicitly characterized the plaintiff's declaratory judgment action as "procedural fencing," disavowed the notion that the prize should go to the winner of the race to the courthouse, and suggested that the plaintiff's hastiness may have invoked needless litigation. *Id.* at 750.

The court finds *Tempco* to be distinguishable from the facts of this case. First, in this case the court is not confronted with a declaratory judgment action versus an infringement action. Rather, both this lawsuit and the California lawsuit are declaratory judgment actions. Holdings asserts that its termination of the license agreement is not effective until February 16, 2005. *See* Def. Big Dog Holdings, Inc.'s First Am. Countercls. in the California lawsuit, ¶ 27, at 7. Consequently, here, neither of the party's rights to a coercive remedy have accrued yet and therefore this consideration does not favor one party's forum preference over another. Moreover, an overriding consideration that the court finds to be far more powerful in this case is that Motorcycles does not appear to have been engaging in a race to the courthouse in order

to invoke needless litigation.  Rather, litigation between the parties regarding their common law rights in the marks was likely inevitable once Holdings terminated the license agreement, Motorcycles' rights in the marks reverted to Motorcycles, and Holdings demanded that Motorcycles cease using the marks and change its corporate name to avoid infringing upon Holdings' rights in the marks.  Given the parties' lengthy history of attempting to resolve this dispute without litigation, the fact that Motorcycles resorted to court intervention to resolve the issue of the parties' respective rights post-termination of the license agreement does not seem improper, hasty, or unnecessary, as appears to have been the case in *Tempco*.  In fact, unlike in *Tempco* where the defendant filed suit four days later, in this case Holdings did not assert its counterclaims until more than three months after plaintiff filed this lawsuit.  This suggests that Motorcycles filed this lawsuit out of a concern for its own interests rather than merely in an attempt to preempt Holdings from asserting claims to resolve this issue.  For these reasons, the court is unpersuaded that this case presents the type of circumstances that would warrant giving priority to Holdings' later-filed counterclaims.  Accordingly, the court is of the opinion that the first-to-file rule calls for this court to decide plaintiff's claims.

The court finds nothing unjust about allowing Motorcycles to initiate tangentially related but ultimately distinctly separate litigation against Holdings in these two separate forums.  The two different lawsuits are attributable to the forum selection clause in the 2004 settlement agreement pursuant to which Motorcycles was required to file claims based on the license agreement in California.  Motorcycles explains that this forum selection clause was at Holdings' behest, an explanation which seems imminently plausible given Holdings' historic

14

penchant for litigating the parties' disputes in California. Thus, the two-lawsuit predicament is just as attributable to Holdings as it is to Motorcycles. This forum selection clause should not have the ancillary impact of entitling Holdings to force Motorcycles to litigate claims that Motorcycles is not required to litigate in California.[2]

This consideration bears on the remaining factor that the court is to consider in deciding whether transfer is warranted—that is, the relative advantages and obstacles to a fair trial. Motorcycles contends that it would be prejudiced by being forced to litigate issues relating to the license agreement in conjunction with the common law infringement and unfair competition issues. According to Motorcycles, this would "further complicate an already complicated situation" because it would be impossible for a jury to decide the contract claims under the license agreement, then put all that aside and decide the infringement claims as if the license agreement never existed. In reply, Holdings argues that there are myriad procedures to minimize the impact of this complexity. While that may be true to a certain degree, the court is nevertheless of the opinion that the better route would be to keep the two lawsuits separate to avoid the risk of potential confusion regarding the two sets of claims. After all, as explained previously, the two lawsuits truly do involve separate and distinct issues. The California lawsuit involves the parties' historic disputes surrounding the license agreement whereas this lawsuit seeks a declaration of their ongoing common law rights in the marks once the license agreement is no longer in force. In the end, this case is potentially the far more

---

[2] The parties seem to agree that the California forum selection clause does not encompass the claims that Motorcycles asserts in this lawsuit.

important of the two lawsuits because it will determine their rights going forward, and Motorcycles should not run the risk of suffering prejudice in the determination of those rights simply because once upon a time it agreed to a California forum selection clause with respect to other claims against Holdings.

Holdings also points out that the California case is set for trial in August of 2005 whereas this case is not set for trial until January of 2006. The court notes, however, that simply because the California case is currently set for trial sooner does not necessarily mean that it will ultimately be tried first. It is the court's understanding that this court probably has a relatively less congested docket than the Central District of California. Additionally, the court is unfamiliar with the California court's practice in terms of trial date flexibility whereas, as the magistrate judge undoubtedly advised the parties during the scheduling conference in this case, the January 2006 trial setting for this case is a firm trial setting that probably will not change. With that being said, the judge of the lawsuit in the Central District of California is certainly free to try Holdings' declaratory judgment counterclaims first, if he or she wishes to do so, as Motorcycles has not sought to enjoin Holdings from pursuing those counterclaims. Here, the only motion before the court is Holdings' motion to transfer this case to California. For the reasons explained previously, this court is of the opinion that it has a responsibility to adjudicate those claims and the court will not abdicate that duty simply because the California case might go to trial first.

On balance, then, the court finds that defendant has failed to satisfy its burden of demonstrating that the interests of justice weigh sufficiently in its favor to overcome the

strong presumption that the court must give to plaintiff's first choice of forum. The first-to-file rule favors retaining the action here. Moreover, the court is persuaded that considerations regarding the relative advantages and obstacles to a fair trial weigh in favor of retaining this case in order to reduce the risk that the determination of Motorcycles' common law rights in the marks will be prejudiced by the possibility of combining those claims with the parties' disputes regarding the licensing agreement. Accordingly, a transfer of the case is not warranted.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to dismiss or alternatively for transfer (doc. 4) is denied.

**IT IS SO ORDERED** this 11th day of January, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge